I've always thought it was a bad idea to argue to a jury just before lunch, and so I'm glad that this panel isn't a jury at this time. My name is Mark Ahmet. I'm with the Federal Defender's Office in Fresno, and I represent Miriam Zislovich, and I would like to reserve about three minutes at the end. May it please the Court, this appeal is about the treatment of park visitors in Yosemite with a plural. Could I interrupt for just one second? Do we have jurisdiction? I'm a little concerned. There's a reissue of the district court decision. The government suggests that there's no jurisdiction because it's basically a way around FRAP 4. Right. And one of the answers that I think you give in your reply brief is that it's really an appellate decision that we're reviewing. But I don't know that isn't the appeal to us governed by exactly the same statutes that govern and rules that govern an appeal from a conviction in the district court itself? I believe, Your Honor, that it's really both. If this is strictly a FRAP 4 issue, we're dead. We can't be here. I concede that from the first decision from the district court sitting as the appellate court. That ruling, I believe, was in May, and by the time we filed our notice of appeal that time in the long run it was well past the 10, well past the 30, and the combination of the two. The question, and I think the FUMAI case, and I've researched this and gathered together in our reply, is the cases that I can find, and I think the closest case in this circuit is the FUMAI case that really looks at this sort of awkward hybrid area of a district court sitting as an appellate court. And that case, among other things, seems to suggest that a district court sitting as an appellate court is really guided by the appellate rules. And those same rules, coming with those rules, we believe, come the inherent powers of an appeals court in whether or not it can issue its own, reissue its own. Recall a mandate. Yes, right. And we can go through all the mechanical parts, but we think that that brings us really to the same place as if the same issue had happened in this court. We'll look at it. If we don't have jurisdiction there, we don't have it. And we're certainly not hanging on some construction of Rule FRAP 4, and we understand that those rules are very strict and, from our view, somewhat harsh under certain circumstances. But in this kind of a situation where this was a district court sitting as an appeal court, we believe that this is fundamentally different and for the reasons that we set out in the reply brief. Thank you. Did you represent the defendant prior to indictment? Yes. I suppose we should begin by congratulating you on avoiding her being charged with assault. Well, she was initially charged with assault. And you got it down? Yes. Okay. Well, congratulations. Thank you. The issue that may well be the case. All of the facts, of course, including the supposed assault, were before the magistrate judge when he did impose a sentence in this case. The issue that we're seeking to raise, assuming we get past the jurisdictional issue, and I can address any further questions of the court on that issue if the court has questions, but going to the merits, we feel, by our view, that this is really a question of the intersection between law enforcement and park visitors when there is some sort of a protest urged. And in this case, although we have the specific facts of this case, we also have the testimony of Ranger Hayman, and this is an excerpt of Record 155-156. He says, have you ever arrested other individuals who have torn up their citations? And he answered, yes, I have. And although the facts of Ms. Zislovich's case are interesting, involves somewhat of a culture clash, Ms. Eco Kosher Girl from Berkeley in Israel versus these very macho rangers up at Yosemite National Park, for the purpose of the issue that we're raising on appeal, we see that those specific facts are not terribly important. Instead, what we see is a pattern that is important. We have a technical violation of a law, and virtually every violation in a park such as Yosemite would be a petty offense. There is some sort of argument that generates behind this, whether it's reasonable or not. A decision is made by the ranger to issue a ticket up there called a violation or notice of violation, and then there's some sort of protest by tearing the ticket up, and then the decision by the ranger to arrest the person. How clear is it on the record, if it is clear at all, that the ranger does have the option of arresting if he has reason to believe that a citation won't be honored? That really goes to our second and third arguments on the merits, whether or not the ranger has the option. We believe that there is the general statute that gives a ranger, as a law enforcement officer, a right to arrest individuals for, among other things, misdemeanors committed in his presence, and we would concede that technically camping out of bounds would be a misdemeanor committed in his presence, and so it would meet that threshold level. One of the things, even if this ranger does arrest other people who tear up their tickets, I would think that his answer would be, well, sure, when they tear up the ticket, I'm pretty sure that they're telling me they're not going to come. You know, they don't care for my citation. They're not going to pay any attention to it. I would answer, Your Honor, that they don't have to care for that citation. They don't have to like it. They can say that they don't like what he's doing if when I'm to come or pay. He's supposed to come or pay eventually, but not yet, and that is also a key distinction that I would like to point out here. If after this argument today, and I'm driving back to Fresno, and I get stopped by the highway patrol for speeding, and I'm handed a ticket, I'm asked to sign that ticket, and that is, among other things, I believe, some sort of promise to pay under California law, and if I refuse to sign that. Or appear. Pardon me? Pay or appear. Yes. But. Or traffic. Right. But you sign for it. But I'm signing for something that is obligating myself to do something. I'm promising to do something. The way these federal notice violations are constructed, the individual is not required to sign anything. They are simply served with this notice, which puts them on notice that the officer believes they committed this offense and that they have to do this or that within 21 days. And the instruction, and it's set out in the excerpts of record, gives them 21 days to either send the money or to appear in court, to make arrangements to appear in court. And if she's angry or some other visitor is angry on a day in question and tears up a ticket as a way of saying, I don't like what you're doing, I don't like this system, or whatever, that person is under no obligation to do anything in particular with that ticket. They're a copy of their ticket. They can smoke it, they can throw it away, they can wrap their lunch in it, they can do anything with that piece of paper. That's expressive conduct from our view. And the officer who had already, even if he had the statutory authority to arrest for that type of a misdemeanor, leaving aside the bail arguments and those things, having made the decision that this was a person to give a ticket to, a notice to, then to turn around and change that decision at that point from the notice citation instead to arresting the person on the spot. And the officer in this case conceded that he did it only at the time that she tore the ticket up. There's no question about that. We can get into some esoteric philosophical issues about what went into his head at that point. But that was the trigger. And that having, even if he had the statutory authority, and we have some question about that for this kind of offense under these circumstances, but assuming he had that authority, once he decided, and as he did here, told her he was going to issue a ticket and then did so, he served it, he handed it to her, although he says she didn't, quote, receive it, she took it in her hand. She didn't accept it in his sense of some philosophical sense that he was reading into it. But she received the paper. She was served with this paper. She had the obligation. And by our view, that was the end of the transaction. What she did with the paper didn't matter. Her only next legal obligation was what she would do 21 days later. And instead, for this expression, because of that expression, she was arrested. And we believe that that is a punishment for her expression of her view of how the government was conducting itself at that point, running afoul of the First Amendment. Okay. We're over time. Thank you for your argument. We'll hear from the government. I believe it's still good morning. Karen Escobar on behalf of the United States. I did handle the case in the at the magistrate court level, at the district court level. Originally, the defendant was charged with a felony assault, along with the petty offenses of the involving the camping violation and the off-road use of a motor vehicle. And as I indicated in the brief, we eventually dropped down the felony assault. We dismissed the felony assault. We superseded. I didn't miss an opportunity to thank the government for, A, understanding that it has discretion, and, B, for exercising it. You're welcome. And that was after consideration of the psychological evaluation that Mr. Ament submitted to us to try to resolve the case, indicating that the defendant has serious psychological problems, is bipolar, et cetera. So we then charged that interfering regulation. It's our position, first of all, the Court does not have jurisdiction to now consider this appeal in light of the fact that the district court did not have authority to reissue its judgment beyond the 40 days that 4B, Rule 4B, would allow. The decision to reissue came some 92 days after the 10-day period that is mandatory that the defendant had to file its notice of appeal. So it's our position, first of all, the Court does not have to reach the merits. If the Court does decide to reach the merits, however, it's our position, first of all, there was sufficient evidence to convict the defendant of interfering with the lawful duties of the park ranger prior to the issuance of the ticket. It's our position, also, that there was no issuance of the ticket, because once Ms. Zislovich obtained the ticket, she did not acknowledge it. There were boxes for her to check. She did not do that. There's no indication that she would have appeared. Kennedy. But those boxes aren't required to be checked on the spot, are they? Is there anything she has to do when she's given one of those? You know, I believe there are boxes that require that are required to be checked, but her signature is not required. Do we have the form of the citation in the record? I don't believe we do. I think Mr. Arment might have referred to it, but I don't think it's in the record. I mean, you just check boxes, but you don't sign it, and you give it back to the ranger then, or what do you do? No. I don't believe there are – I do not believe that there is a signature required. I mean, there are boxes to check. And I do not believe that the ticket was in the record. You don't think the boxes just say something like, I have elected not to appear and I want to forfeit my bail in year 50? Exactly. In year 50? Exactly. Oh, well, okay. But you don't do that right away, necessarily. You take it home and think about it. And then mail. Mail in the collateral. There was no indication that Mrs. Litch was going to do any of that, and the officer was entitled, statutorily and under the policy of the park, to arrest because he did not believe that she would appear, and rightly so. In any event, the cases that we have cited to, we believe are on point. There are no other applicable cases other than Foster v. Metropolitan Airports Commission, the Eighth Circuit case we've cited to, and Donaldson v. Hovannik, which is a district court case, that both deal with ticket issues, tearing up tickets in Foster, and then in Donaldson, where the driver indicated you can take this ticket and shove it, in more explicit language than that, the courts in those cases found that the officer was certainly entitled to arrest after he reasonably believed that these individuals would not appear, and that's the same situation here. The officer was entitled, the ranger was entitled to arrest Mrs. Litch after she tore up the ticket without acknowledging she wasn't even, it didn't even appear that she knew that she was receiving a ticket. She asked several times, what are you doing, what are you doing? It was clear there was not, she was not comprehending what was, what was occurring. He, Rager Hayman, exercised his lawful authority to arrest. The ticket, the issuance of the ticket is a non-factor. It's not a First Amendment case. That is our position. There was, we've also argued in the brief that the, there was no Fourth Amendment violation, and because there was no Fourth Amendment violation and because there was probable cause to support the, the arrest for the charges, the First Amendment argument fails. The tearing up of the ticket we do not believe even constitutes protected speech. As the magistrate judge pointed out, the defendant was not arrested because of the act of tearing up the ticket. The defendant was not arrested because she tore up the ticket. The defendant was arrested because she violated the park regulations for which she was charged. And after the tearing up of the ticket, the ranger had further cause to arrest, in addition, because she littered, which was also a violation. There was a lot of discussion about what the officer intended, what the ranger intended when he arrested. But what the ranger intended, we've submitted cases, also is not relevant, is what was there probable cause to arrest for the charges, and there was. Was there probable cause also to arrest for other charges, such as littering? There was. So it is the government's position. The Court should not consider the case, since the notice of appeal was not timely filed. If the Court does, the park ranger has statutory authority to effect the arrest for interfering, and interfering is not just the regulation is not just interfering with the lawful activity, which does include issuing a citation, but also intimidating. The defendant's conduct was clearly intimidating up until the point of the issuance of the citation, and in addition, conduct after the issuance of the citation supported the arrest. The actual issuance of the citation is not relevant, is not protected speech. This is a Fourth Amendment case. If the Court gets to the merits, it's not a First Amendment case. Thank you very much. If the Court has questions, I'd be glad to answer. It's an interesting little case, somewhat esoteric, so. I don't see any. Thank you for your argument. The case just argued will be submitted for decision, and the Court will stand adjourned. This court for the second standing is adjourned.
judges: Canby, Hawkins, Duffy